

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | | |
|---|---|---|---|
| LANA LEWIS, | § | No. 08-24-00021-CV | |
| Appellant, | § | Appeal from the | |
| v. | § | 34th District Court | |
| VICTOR C. HUFF, JR., | § | of El Paso County, Texas | |
| Appellee. | § | (TC# 2022DCV1629) | |

**MEMORANDUM OPINION**

Before us is the second case in so many years in which Appellant Lana Lewis seeks contribution from Appellee Victor C. Huff, Jr. for payments that she made on behalf of their jointly owned company, Star Operations, Inc. *Lewis v. Huff*, No. 08-23-00031-CV, 2023 WL 6931743, at *3 (Tex. App.—El Paso Oct. 19, 2023, no pet.) (mem. op.). In the first case, Lewis sought contribution after paying the supersedeas bond in an appeal of a judgment against Star. *Id.* at *3. There, we held, with Justice Palafox dissenting, that Lewis failed to produce evidence that the payment she made was compulsory under an indemnity agreement with Great American Insurance Company and we affirmed the trial court's directed verdict. *Id.* at *5. In this case, Lewis seeks contribution from Huff for payments she made to attorneys and for arbitration, again related to claims against Star and indemnity agreements. The trial court entered summary judgment against

her, and she appealed. Although the facts and procedure of this case are different, we are again asked to determine if Lewis presented more than a scintilla of evidence that the payments she made were compulsory. For the following reasons, we affirm.

## I. FACTS

In 1996, Lewis founded Star Operations, Inc., a construction company. In 1998, Lewis married Huff, who also owned a construction company, and they merged the two companies into Star. Though the parties have divorced, they continue to be joint shareholders and owners of Star, with Lewis as the president.

Because of Star's work on public projects, Star was required to hold payment and performance bonds. Great American Insurance Company (GAIC) and SureTec Insurance issued the bonds. In return, Star, together with Lewis and Huff individually, signed general indemnity agreements, agreeing to be jointly and severally liable to GAIC and SureTec for any liability and costs related to the bonds.[1]

Multiple claims were made against the bonds in connection with Star's construction projects. As a result, GAIC sent a letter to Lewis demanding that the indemnitors "immediately deposit with [GAIC] cash or other equivalent collateral, satisfactory to [GAIC] in the amount to $750,000 to be used to exonerate [GAIC] from all loss, costs and expenses and to keep indemnified from and against all liability for loss, costs and/or expense going forward." SureTec also sent a letter recognizing that Star had been terminated from some projects and defaulted on others, and it identified 21 claims and claim notices that it received on Star's bonds. SureTec requested that

---

[1] Crystal Signs was also a co-indemnitor on both agreements and Rose Resource Capital, LLC, was a co-indemnitor on the GAIC agreement. Lewis represents that Crystal is insolvent and Rose Resource Capital has dissolved. Crystal and Rose are not parties to this suit.

the indemnitors contact it "immediately to discuss the information . . . and [the indemnitors']

intentions with respect to performing [their] obligations under the Agreement."

Lewis does not claim that she deposited the requested collateral but asserts that, because

of the indemnity agreements, she paid attorney's fees in the amount of $180,435, arbitration fees

in the amount $17,535, and "all claims and costs in connection with the bonds on behalf of

Indemnitors in the amount of $577,518.50." She filed suit against Huff for equitable contribution,

requesting that he compensate her for half of those costs.

Huff filed a general and verified denial, alleging that his signature on the indemnity

agreements was forged. Later, after the scheduling order's deadline to amend pleadings, Huff filed

a motion for leave to supplement his answer, claiming that Plaintiff had recently produced

documentation that raised the issue of her capacity to file suit. Although it does not appear that the

trial court ruled on his motion, Huff also filed a supplemental verified denial challenging Lewis's

capacity.

Huff filed a no-evidence motion for summary judgment which asserted the following:

1.  There is no evidence that any legal fees invoiced to Star between August 4,
    2017, until October 29, 2019, were incurred or sustained by GAIC.

2.  There is no evidence that any Arbitration fees assessed against Star from
    December 13, 2017, through January 1, 2021, were incurred or sustained by
    GAIC.

3.  There is no evidence that Lewis actually paid any legal fees invoiced to Star
    between August 4, 2017, until October 29, 2019.

4.  There is no evidence that Lewis has made a compulsory payment arising from
    the indemnity agreement specifically there is no evidence that GAIC demanded
    or compelled either Star and/or Lewis to incur any legal fees invoiced to Star
    between August 4, 2017, until October 29, 2019, or to incur any arbitration fees
    from December 13, 2017, through January 1, 2021.

5. There is no evidence that Lewis and/or Star paid the legal fees incurred by GAIC and owed to GAIC's counsel, Robert Fitzgerald, between August 4, 2017, until October 29, 2019.

6. There is no evidence that Lewis paid more than Huff to GAIC in the August 2018 Settlement between GAIC, Lewis, and Huff in the Western District of Texas, Case Number [] 5:18-cv-00132, wherein the parties settled the GAIC demand for indemnity on the claims filed by James against Bond CA2505243 Subcontract Agreement 10400-S24, Bell County–IH 35 Salado.

7. There is no evidence that Lewis has standing to assert the equitable contribution claim that forms the basis of her lawsuit because she assigned that cause of action to a third party and no longer has legal capacity to prosecute it herself.

.     .     .

8. There is no evidence that Lewis made any payment directly to SureTec on the demand of SureTec.

9. There is no evidence that the amounts Lewis paid between June 28, 2018, until April 23, 2021, were done at the <u>direction, demand, or requirement</u> of SureTec or under compulsion from SureTec.

10. There is no evidence that Lewis paid $577,518.50 between June 28, 2018, until April 23, 2021, <u>to SureTec</u> or <u>at the demand of SureTec.</u>

11. There is no evidence that Lewis has standing to assert the equitable contribution claim that forms the basis of her lawsuit because she assigned that cause of action to a third party and no longer has legal capacity to prosecute it herself. (emphasis in original).

The trial court granted Huff's motion for summary judgment, but the final order does not state the grounds for its ruling. In three issues, Lewis appeals the summary judgment. She argues that (1) Huff could not challenge her capacity by a no-evidence motion for summary judgment because he had the burden of proof on that issue; (2) the motion for summary judgment was not sufficient because it did not challenge specific elements of her claim; and (3) the trial court erred in entering summary judgment because she produced more than a scintilla of evidence.

## II. ANALYSIS

### A. Equitable contribution

Lewis's sole cause of action was for equitable contribution. As we recognized in her prior appeal, a claim for equitable contribution has two elements: "(a) the plaintiff and the defendant share a common obligation or burden, and (b) the plaintiff 'has made a compulsory payment or other discharge of more than its fair share of the common obligation or burden.'" *Lewis*, 2023 WL 6931743, at *3 (quoting *Kroesche v. Wassar Logistics Holdings, LLC*, No. 01-20-00047-CV, 2023 WL 1112002, at *25 (Tex. App.—Houston [1st Dist.] Jan. 31, 2023, pet. denied) (mem. op.) and *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 772 (Tex. 2007)).

### B. Stare decisis

Before proceeding to analyze the summary judgment in this case, we pause to discuss the effect of our decision in the prior appeal on the analysis of this one.

Huff argues that stare decisis "is particularly important to this appeal" because it involves the same parties and the same cause of action. Stare decisis obligates a court of appeals to "follow materially indistinguishable decisions of earlier panels of the same court." *Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022). First, we note that our prior decision was in a case transferred from the fourth court of appeals for docket equalization purposes. *Lewis*, 2023 WL 6931743, at *1, n.1; Tex. Gov't Code Ann § 73.001. This appeal, however, originated in our Court. Therefore, if there were any conflicts between the courts, we would have followed fourth court precedent in the first appeal, and our own precedent in this one. Tex. R. App. P. 41.3. ("the court of appeals to which the case is transferred must decide the case in accordance with the precedent of the transferor court under principles of stare decisis if the transferee court's decision otherwise would have been inconsistent with the precedent of the transferor court") However, we were not faced with any

inconsistencies in the precedents of this Court and the Fourth Court of Appeals. And we relied in the prior decision, as we do now, on Texas Supreme Court precedent. *Lewis*, 2023 WL 6931743 at *3 (citing *Mid-Continent Ins. Co.*, 236 S.W.3d at 772 and *Emps. Cas. Co. v. Transp. Ins. Co.*, 444 S.W.2d 606, 609–10 (Tex. 1969)).

Furthermore, stare decisis always requires us to follow our own decisions (in non-transferred cases); stare decisis does not apply *more* in cases involving the same parties and cause of action. Although both of Lewis's appeals involve applying the law pertaining to equitable contribution, we analyze this case according to the facts before us now.

### C. No-evidence motion for summary judgment

A party may file a no-evidence motion for summary judgment "on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." Tex. R. Civ. P. 166a(i). To avoid summary judgment, the nonmovant must produce "more than a scintilla of probative evidence to raise a genuine issue of material fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). Evidence that is "so weak as to do no more than create a mere surmise or suspicion" of a necessary element is less than a scintilla and will not support a summary judgment. *Id*. (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983).

We review summary judgments *de novo* and determine if the nonmovant produced "more than a scintilla of probative evidence to raise a genuine issue of material fact." *Id.* In our review, "we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019). When, like in this case, the trial court does not specify in it is order the ground on which it granted summary judgment, we must affirm if the judgment is

6

proper on any ground. *FM Properties Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

### (1) Challenge to Lewis's capacity

In his motion for summary judgment, Huff asserts that Lewis has no evidence of her capacity to bring suit. He states:

> There is no evidence that Lewis has standing to assert the equitable contribution claim that forms the basis of her lawsuit because she assigned that cause of action to a third party and no longer has legal capacity to prosecute it herself. [2]

Although capacity is not an element of a cause of action, once it is challenged, the plaintiff has the burden to prove it. *JPMorgan Chase Bank, N.A. v. Prof'l Pharmacy II*, 508 S.W.3d 391, 409 (Tex. App.—Fort Worth 2014, no pet.). However, Lewis argues that Huff's theory that she does not have capacity because she assigned her rights is an inferential rebuttal that requires *him* to produce evidence. *Villanova v. Fed. Deposit Ins. Corp.*, 511 S.W.3d 88, 99 (Tex. App.—El Paso 2014, no pet.) ("Inferential rebuttals are defensive theories that operate to rebut an essential element of the plaintiff's case . . . by establishing the truth of a positive factual theory that is inconsistent with some factual element of the ground of recovery."). Lewis reasons that because Huff has the burden of proof on an inferential rebuttal, *Id.*, he cannot shift that burden to her with a no-evidence motion for summary judgment. We need not address this issue because, even assuming that Lewis is correct and Huff cannot place the burden on her to prove that she did not

---

[2] Huff refers to this issue as one concerning both "standing" and "capacity." "A plaintiff has *standing* when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has *capacity* when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996) (emphasis in original). A challenge to a party's right to recover based on an assignment raises a capacity issue. *Nasr v. Owobu*, No. 01-20-00631-CV, 2022 WL 3649347, at *7 (Tex. App.—Houston [1st Dist.] Aug. 25, 2022, no pet.) (mem. op.); *Obsidian Sols., LLC v. KBIDC Investments, LLC*, No. 05-19-00440-CV, 2021 WL 3276877, at *4 (Tex. App.—Dallas July 30, 2021, no pet.) (mem. op.).

assign her rights, we hold that Huff is entitled to summary judgment on other grounds. *FM Properties Operating Co.*, 22 S.W.3d at 872 ("When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious."); Tex. R. App. P. 47.1 (court of appeals must address every issue "necessary to final disposition of the appeal").

### (2) Sufficiency of Huff's motion

Lewis argues that Huff's motion for summary judgment was not sufficient because it attacks the factual allegations of her petition but "never connected his myriad challenges to any *element* of Lewis's claim."

Rule 166a(i) provides that a party may "move for summary judgment on the ground that there is no evidence of one or more essential *elements of a claim* or defense . . . ." Tex. R. Civ. P. 166a(i) (emphasis added). The point of contention here is the meaning of the word "claim." Huff argues that the rule's use of the word "claim" instead of "cause of action" means the no-evidence motion must challenge the factual allegations in the nonmovant's pleading that underpin the cause of action. Lewis, on the other hand, contends that the terms "claim" and "cause of action" are synonymous. We agree with Lewis. The Texas Supreme Court has noted that both terms "refer to a legal right that a party asserts in the suit that constitutes the action." *Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 564 (Tex. 2014). A claim is a legal right, and not a party's factual assertions or evidence in support of that right.

In the summary judgment context, courts have also construed the term "claim" to mean "cause of action" when analyzing the requirements of a no-evidence motion for summary judgment. For example, in *Garcia v. State Farm Lloyds*, the plaintiffs, dissatisfied with the amount paid by their home insurance for water damage, filed suit against the insurer for breach of contract,

breach of the duty of good faith and fair dealing, violations of the Texas Insurance Code, and violations of the Texas Deceptive Trade Practices Act. *Garcia v. State Farm Lloyds*, 287 S.W.3d 809, 815 (Tex. App.—Corpus Christi–Edinburg 2009, pet. denied). The insurer filed a no-evidence motion for summary judgment arguing "(1) there was no evidence that it owed the Garcias more than it already paid; (2) there was no evidence that the Garcias had any complaint with the way State Farm handled their claims, other than that State Farm did not pay enough; and (3) there was no evidence of any misrepresentations by State Farm." *Id*. at 818–19. The court held that the motion was insufficient to support a summary judgment because it "did not state specifically which elements of the claims were being challenged, but rather, attacked one of the Garcias' factual theories without specifying which elements the theory allegedly supported." *Id.* at 819; *see also Jose Fuentes Co., Inc. v. Alfaro*, 418 S.W.3d 280, 283 (Tex. App.—Dallas 2013, pet. denied) ("A no-evidence motion for summary judgment may be directed at specific factual theories or allegations within a claim or defense *only* if the challenge to the factual allegation is connected to a no-evidence challenge to a specified element of a claim or defense.")

We agree with Lewis that most of Huff's arguments in his motion (listed above) attack her factual allegations without connecting them to an element of her claim. However, we find that two of his allegations do specify an element of an equitable contribution claim–the compulsory payment element:

4.  There is no evidence that Lewis made *a compulsory payment* arising from the indemnity agreement–specifically there is no evidence that GAIC <u>demanded or compelled</u> either Star and/or Lewis to incur any legal fees invoiced to Star between August 4, 2017 until October 19, 2019 or to incur any arbitration fees from December 13, 2017 through January 1, 2021.

.     .     .

9. There is no evidence that the amounts Lewis paid . . . were done at the <u>direction, demand, or requirement</u> of SureTec or under *compulsion* from SureTec. (emphasis added).

We overrule Lewis's second issue insofar as it relates to the sufficiency of the motion to challenge Lewis's evidence of compulsory payments.

### (3) Evidence of compulsory payments

To defeat summary judgment, Lewis had to produce more than a scintilla of evidence that the payments she made were compulsory. *King Ranch*, 118 S.W.3d at 751. A payment is compulsory if "the party making it cannot legally resist it." *Employers Cas. Co. v. Transp. Ins. Co.*, 444 S.W.2d 606, 609–10 (Tex. 1969) (quoting 18 AM.JUR.2d 24—25, Contribution § 11). "A voluntary payment which he is not under legal obligation to make does not give a right of action against his co-obligors for contribution." *Id.* at 609 (quoting 18 AM.JUR.2d 24—25, Contribution § 11).

Lewis responded to the motion for summary judgment with evidence that she paid attorneys and arbitration fees either directly to the law firm and American Arbitration Association or by depositing money into Star's account to be used for that purpose. She argues, as she did in the trial court, that the payments were compulsory because the terms of the GAIC indemnity agreement require indemnification of its legal costs–specifically "all liability for losses, costs, and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, consultant or expert fees, and counsel fees) . . . ." However, the agreement only requires indemnification of *GAIC's* costs, and there is no evidence that GAIC incurred these costs.[3] Nor

---

[3] Lewis's affidavit on the matter is vague, stating only that "Matthew Wymer, with Akerman LP, was hired . . . .," without saying *who* hired him. But it does not appear that Akerman LLP represented GAIC. The arbitration demand filed by James Construction lists a different attorney for GAIC. Akerman's invoices were billed to Star, not GAIC. Furthermore, GAIC's letter to Lewis indicates that her attorney is not GAIC's attorney. It states, "[W]e understand that you are currently exploring options with your attorney as how to proceed with this dispute."

did Lewis produce any evidence that her payment of those costs reduced GAIC's liability. The fact that legal costs are the kinds of expenses for which GAIC must be indemnified does not mean that payment of any legal costs incurred by any indemnitor is required by the indemnity agreement.[4]

Further, the indemnity agreement requires that payments by the indemnitors "shall be made *to the Surety* by the [indemnitors], *upon demand* by the Surety." (emphasis added). Had GAIC demanded that Lewis pay it for the costs it had incurred in legal fees, Lewis's payment to GAIC would give rise to an equitable contribution claim. But that is not what the evidence shows. The letter GAIC sent to Lewis demands that she "immediately deposit with [GAIC] cash or other equivalent collateral, satisfactory to Great American Insurance Company in the amount of $750,000." GAIC did not demand that Lewis hire or pay an attorney.[5] The same is true for the payment of arbitration costs. Under the indemnity agreement, GAIC could demand that Lewis pay GAIC for those costs. But GAIC did not make that demand and Lewis paid the fees directly.

Lewis also argues that she produced evidence that she made payments compelled by the indemnity agreement with SureTec. That agreement, like the one with GAIC, is comprehensive in the types of expenses it covers. It states as follows:

> The Indemnitors shall indemnify and save the Company harmless from and against every claim, demand, liability, cost, loss, charge, suit, judgment, award, fine, penalty, and expense which the Company may pay, suffer, or incur in consequence of having executed, delivered, or procured the execution of such bonds, or any renewals or continuance thereof or substitutes therefor, including, but not limited to court costs, mediation and facilitation fees and expenses, funds disbursement and escrow fees, fees and expenses of attorneys, accountants, adjusters, inspectors, experts, and consultants, whether on salary, retainer, in-house, or otherwise, and

---

[4] The basis of Lewis's compulsory payment claims are only the indemnity agreements. We make no finding on whether Lewis's evidence would be evidence of a compulsory payment if her claim was based on a joint contractual obligation with the law firm.

[5] We also note that some of Lewis's payments to Akerman LLP and deposits into Star's account she claims were used to pay attorney's fees were made before GAIC's March 13, 2017 demand letter and therefore could not have been paid in response to a demand from GAIC.

the expense of determining liability, or procuring, or attempting to procure, release from liability, or in bringing suit or claim to enforce the obligation of any of the Indemnitors under this Agreement.

SureTec sent a letter to all indemnitors informing them that they have received multiple claims and claim notices against Star and that they reserved $710,000 for losses. The letter "insist[s]" that the indemnitors "perform all of [their] obligations under the Agreement," states that "it is essential that we immediately discuss the appropriate collateral being deposited with SureTec," and requests that the indemnitors contact it "to discuss the information set forth herein and your intentions." In short, the SureTec letter does not demand a payment, but demands that they contact them to *discuss depositing collateral.*

Further, the SureTec indemnity agreement, like the GAIC agreement, states that payments should be made to SureTec upon demand: "Indemnitors acknowledge and agree that all loss, cost, and expense . . . is included as an indemnified expense and shall be paid by Indemnitors *to Company on demand.*" (emphasis added) Lewis did not present any evidence that she made payments to SureTec. With her response to Huff's motion for summary judgment, Lewis attached invoices that the law firm Bailey & Bailey, P.C. sent to her, proof of payments to Bailey & Bailey, P.C., and Star's checking account statements showing money was transferred from Lewis to Star (presumably to make payments related to the claims against it). None of this evidence reflects that Lewis made payments to Sure Tec or that SureTec incurred these expenses, demanded that Lewis incur these expenses, or demanded that Lewis pay those expenses directly to Bailey & Bailey, P.C.

Because the evidence shows only that Lewis made payments, but not that those payments were made to GAIC or SureTec or upon their demand, Lewis has failed to show that she made compulsory payments under the indemnity agreements. We overrule Lewis's third issue.

## III. Conclusion

Lewis failed to respond to Huff's no-evidence motion for summary judgment with more than a scintilla of evidence that the payments for which she sought equitable contribution were compulsory. The judgment of the trial court is affirmed.

MARIA SALAS MENDOZA, Chief Justice

January 31, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.